**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HEALTH PARTNERS PLANS, INC.
1101 Market Street, Suite 3000
Philadelphia, PA 19107

PARTNERS INSURANCE COMPANY, INC.
1101 Market Street, 31st Floor
Philadelphia, PA 19107

PARTNERS INSURANCE COMPANY OF NEW JERSEY, INC.
500 Marlboro Avenue
Cherry Hill, NJ 08002

THOMAS JEFFERSON UNIVERSITY
1101 Market Street, 31st Floor
Philadelphia, PA 19107

Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Hubert H. Humphrey Building
200 Independence Avenue, S.W.
Washington, D.C. 20201

CENTERS FOR MEDICARE & MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244

Defendants.

Civil Action No. 26-cv-3908

**COMPLAINT**

Plaintiffs Health Partners Plans, Inc. (“HPP”), Partners Insurance Company, Inc. (“PIC”), and Partners Insurance Company of New Jersey, Inc. (“PICNJ”) (the “JHP Entities”), and their ultimate corporate parent, Thomas Jefferson University (“TJU” and together with the JHP Entities,

the "Jefferson Parties"), by and through their undersigned counsel, bring this Complaint seeking relief against Defendants the United States Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS") (together, "Defendants").

In support of this Complaint, Plaintiffs allege as follows:

## INTRODUCTION

1. CMS administers the Medicare Advantage ("MA") program through private insurers that contract with the United States to deliver Medicare benefits to millions of beneficiaries. The MA plans offered by those private insurers—referred to in this context as Medicare Advantage Organizations (or "MAOs")—are evaluated annually by CMS through its Star Ratings program, by which CMS rates each contract held by the MAO on a one-to-five-star scale.

2. To calculate a contract's Star Rating, CMS assesses every MA contract against a set of "measures" using a methodology covering quality, compliance, and related metrics. The resulting ratings are intended to serve two purposes: (1) indicate coverage quality to beneficiaries; and (2) determine certain funding for MAOs—in the form of rebate retention and Quality Bonus Payments ("QBPs")—that CMS is obligated to provide to the MAO holding the contract in the year following the rating year (*i.e.*, the payments lag a year behind the ratings).

3. Thus, Star Ratings are not merely a scorecard on plan quality. Star Ratings also carry profound reputational and financial consequences for every MAO, and they directly shape the benefits and options available to Medicare beneficiaries.

4. On October 8, 2026, CMS released the "2027 Star Ratings"; those ratings in turn will dictate 2028 rebate retention and QBPs.

5. By this action, the Jefferson Parties challenge CMS's calculation of the 2027 Star Ratings for each of the JHP Entities and ask the Court to set those ratings aside. Specifically, the Jefferson Parties challenge CMS's use of three measures to calculate the ratings for Contracts H9207, H1619, and H3124. These three measures were adopted in excess of CMS's statutory authority under 42 U.S.C. § 1395w-23(o)(4)(A), and without proper public notice-and-comment rulemaking as required by 42 U.S.C. § 1395hh(a)(2).

6. In bringing this action, the Jefferson Parties do not ask the Court to write on a blank slate; rather, recent precedent supports this action. In May 2026, in *Clover Insurance Co. v. U.S. Department of Health & Human Services*, the United States District Court for the Southern District of Georgia held that CMS's use of 20 Star Ratings measures in the calculation of that plaintiff's 2026 Star Rating was unlawful. Those 20 measures were identified by Clover as improperly and negatively impacting its Star Rating. The court held that (a) with respect to ten of the measures, CMS relied on data that under the Medicare statute, it was not authorized to rely on, and (b) with respect to the other ten measures, CMS was required, but failed, to adopt them via notice-and-comment rulemaking. *Clover Ins. Co.*, 2026 WL 1483515, at *25. The *Clover* court thus vacated the plaintiff's 2026 Star Rating and ordered CMS to recalculate that rating. CMS complied.

7. The three measures challenged by the Jefferson Parties are among the 20 held unlawful by the *Clover* court. Specifically, they are among the ten measures the court in *Clover* held improperly relied on data in excess of CMS's statutory authority.

8. Notwithstanding the *Clover* decision, and despite having effectuated the *Clover* judgment by recalculating the 2026 Star Rating for the plaintiff in that matter, CMS proceeded to incorporate the same measures into its calculation of the 2027 Star Ratings for all MAOs *except* Clover. That is, despite the *Clover* judgment being limited to Clover's *2026* Star Rating, CMS

voluntarily calculated Clover's *2027 Star Rating* by excluding the measures the *Clover* court struck down. In doing so, CMS compounded its unlawful actions both by ignoring the *Clover* precedent in calculating the 2027 Star Ratings for the JHP Entities (and all other MAOs but Clover), and by giving Clover special treatment for 2027.

9. Congress has not expanded CMS's legal authority in the intervening months; no development has occurred that renders CMS's reliance on these measures any more lawful today than it was when the *Clover* court issued its decision.

10. Using the three unlawful measures challenged here, CMS calculated 2027 Star Ratings of 3.0 for Contract H9207, 3.0 for Contract H1619, and 2.5 for Contract H3124. If those three unlawful measures were instead left out of the calculation, the JHP Entities' 2027 Star Ratings would be 3.5 for Contracts H9207 and H1619, and 3.0 for Contract H3124.

11. The beneficiary consequences of CMS's unlawful conduct are substantial. The lower Star Ratings translate into approximately $43 million in lower rebate retention across 2028. These are funds that the JHP Entities could deploy directly to expand member benefits, lower premiums, and make investments in quality improvement.

12. Furthermore, the harm suffered is not only financial, but reputational and competitive. CMS publishes detailed Star Ratings (including the Star Ratings for each individual measure) through its Plan Finder tool, which is the primary resource used by Medicare beneficiaries making enrollment decisions, brokers and other market participants, meaning the JHP Entities' unlawfully suppressed ratings are already degrading their reputation in the marketplace, distorting competitive comparisons, and undermining their ability to attract and retain members.

13. CMS should be ordered to recalculate the JHP Entities' 2027 Star Ratings without regard to the three measures challenged here.

## JURISDICTION, VENUE, AND EXHAUSTION

14. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. § 701 *et seq.*, and raises questions under the Medicare statute, 42 U.S.C. § 1395 *et seq*.

15. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against United States agencies.

16. On October 8, 2026, CMS published the JHP Entities' 2027 Star Ratings for Contracts H9207, H1619, and H3124, which constitutes final agency action for the 2027 Star Ratings.

17. No administrative process exists through which the Jefferson Parties may seek reconsideration of CMS's actions.

18. The Jefferson Parties have standing because the JHP Entities are the holders of MA contracts that received 2027 Star Ratings that were calculated using measures that were adopted by CMS in excess of its statutory authority and without regard to procedures required by law. Those unlawful measures impacted the JHP Entities' ratings, inflicting substantial economic harm and placing the JHP Entities at a competitive disadvantage in the MA marketplace.

19. The JHP Entities' improperly calculated 2027 Star Ratings will inflict substantial economic harm on the JHP Entities, amounting to approximately $43 million in lower rebate retention over the course of 2028.

## PARTIES

20. HPP is a Pennsylvania nonprofit corporation maintaining its principal place of

business in Philadelphia, Pennsylvania. PIC is a Pennsylvania insurance corporation, maintaining its principal place of business in Philadelphia, Pennsylvania. PICNJ is a New Jersey stock health insurance corporation, maintaining its principal place of business in Cherry Hill, New Jersey. Thomas Jefferson University is a Pennsylvania nonprofit corporation with its principal place of business in Philadelphia, Pennsylvania.

21. Thomas Jefferson University is the ultimate corporate parent of each of HPP, PIC and PICNJ. The JHP Entities each offer health benefit products and, through contracts with CMS, each of the JHP Entities furnishes coverage to Medicare beneficiaries under Parts C and D, including for Contracts H9207, H1619, and H3124, respectively.

a. Contract H9207, entered into with CMS by HPP, serves its 26,381 enrollees in Pennsylvania.[1] Thomas Jefferson University is the designated parent corporation under the MA program for this contract. Contract H9207 received a 2027 Star Rating of 3.0.

b. Contract H1619, entered into with CMS by PIC, serves its 4,174 enrollees in Pennsylvania. Thomas Jefferson University is the designated parent corporation under the MA program for this contract. Contract H1619 received a 2027 Star Rating of 3.0.

c. Contract H3124, entered into with CMS by PICNJ, serves its 938 enrollees in New Jersey. Thomas Jefferson University is the designated parent corporation under the MA program for this contract. H3124 received a 2027 Star Rating of 2.5.

22. Defendant HHS is a department of the Executive Branch of the United States government charged with overseeing the Medicare program. Its headquarters are situated at 200 Independence Ave., S.W., Washington, D.C. 20201. HHS has delegated its authority to administer the Medicare program to CMS. *See* 66 Fed. Reg. 35437-03 (June 5, 2001).

---

[1] The enrollment figures reflected in this paragraph 21 are as of September 2026.

23. CMS is the HHS component agency primarily responsible for the administration and oversight of the Medicare program. *See id.* Its headquarters are situated at 7500 Security Blvd., Baltimore, MD 21244.

## FACTUAL ALLEGATIONS

### I. Medicare Advantage

24. Medicare is a federal health insurance program established to serve Americans aged 65 and older, as well as qualifying individuals with disabilities. *See* 42 U.S.C. § 1395 *et seq.*

25. Medicare is comprised of four parts, each addressing distinct aspects of healthcare for its beneficiaries. Medicare Part A provides coverage for inpatient hospital stays, skilled nursing facilities, hospice care, and home health care. Medicare Part B provides coverage for outpatient care, physician visits, preventive services, home health care, and durable medical equipment. *See* 42 U.S.C. §§ 1395c through 1395i-6 (Part A); 42 U.S.C. §§ 1395j through 1395w-6 (Part B). Under Medicare Parts A and B—collectively known as "traditional" or "original" Medicare—the federal government acts as the insurer and directly reimburses providers for services provided to enrolled beneficiaries.

26. Alternatively, a beneficiary may elect to enroll in Medicare Part C, known since 2003 as Medicare Advantage, rather than traditional Medicare. Congress established Medicare Part C through the Balanced Budget Act of 1997. *See* 42 U.S.C. § 1395w-21 *et seq.* Through the MA program, CMS contracts with private health insurers to provide Medicare-covered benefits to enrolled beneficiaries; this shifts the financial risk of benefit delivery away from the federal government to privately operated MAOs, which receive a fixed monthly payment for each enrolled member. *See* 42 U.S.C. § 1395w-23.

27. MAOs must provide their members with no less than the same level of benefits

available under traditional Medicare. MAOs integrate coverage from both Parts A and B and often offer prescription drug coverage under Part D, which was enacted in 2003 and effective in 2006 as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003). *See* 42 U.S.C. § 1395 *et seq.*

28. Among other programmatic reforms, the MMA established an annual bidding process. *See id.* § 1395w-23(a)(1)(B). Each year, MAOs submit a bid by the first Monday in June projecting the cost of providing core Medicare benefits for the upcoming plan year, including overhead and profit. *See id.* If the bid falls below CMS's county-level benchmark, CMS refunds a portion of the savings to the MAO as a "rebate"—dollars the MAO may direct toward supplemental benefits, premium reductions, or both. *See id.* § 1395w-23(a)(1)(E).

## II. <u>Star Ratings and their impact on MAOs</u>

### A. Medicare Star Rating calculations

29. CMS began publishing annual performance ratings for stand-alone Medicare Prescription Drug Plans in 2007. In 2008, CMS "introduced and displayed the Star Ratings for Medicare Advantage Organizations . . . for both Part C only contracts . . . and Part C and D contracts (MA-PDs). Each year since 2008, [CMS has] released the MA Star Ratings [subsequently adding] [a]n overall rating combining health and drug plan measures" in 2011. 83 Fed. Reg. 16440, 16520 (April 16, 2018).

30. Even a decade before the launch of the Star Ratings program, however, MAOs were obligated to maintain "an ongoing quality assurance program" for the healthcare services provided to their members. Pub. L. No. 105-33, § 4001, 111 Stat. 251, 291 (1997) (codified at 42 U.S.C. § 1395w-22(e)(1)). Congress expressly conferred upon CMS the authority to select the "quality and outcomes measures" that the Secretary "determine[d] to be appropriate" as components of plans' quality assurance programs. 42 U.S.C. § 1395w-22(e)(1), (e)(2)(A)(xii) (1997). That discretion

created uncertainty and confusion, as CMS proposed various quality measures and practice standards without constraint.

31. In 2003, Congress eliminated this uncertainty by codifying CMS's quality measures into statute. *See* MMA, Pub. L. No. 108-173, § 109, 117 Stat. 2066 (2003). These amendments limited CMS to requiring quality-measure data that were "the types of data that were collected by the Secretary as of November 1, 2003," allowing departure from those data types only after submitting a report to Congress. 42 U.S.C. § 1395w-22(e)(3)(B).

32. In 2004, CMS recognized it was limited under § 1395w-22(e), and, from then on, it would rely exclusively on its pre-existing, pre-2003 measurement systems addressing clinical quality, health outcomes, and beneficiary satisfaction: the Healthcare Effectiveness Data and Information Set ("HEDIS"), Health Outcomes Survey ("HOS"), and Consumer Assessment of Healthcare Providers and Systems ("CAHPS"). *See* 69 Fed. Reg. 46,866, 46,886 (Aug. 3, 2004) ("We interpret section 1852(e)(3)(B)(i) of the Act to mean that we can continue to require MA coordinated care plans to collect, analyze, and report their performance by using the measurement systems that are currently required, such as HEDIS, Health Outcomes of Seniors (HOS), and CAHPS, as appropriate for the type of plan.").

33. CMS inaugurated its Star Ratings system in 2007. In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), introduced the Quality Bonus Payment program and adopted the Star Ratings system as its implementing mechanism. Congress identified § 1395w-22(e) as the sole source of data for quality rating calculations, omitting the clause that had previously afforded the Secretary discretion to consider other measures. *See* 42 U.S.C. § 1395w-23(o)(4)(A).

34. Each contract's overall Star Rating is a composite score ranging from 1 to 5 stars,

including half-stars, obtained by evaluating the contract's performance on "measures" announced by CMS. Different measures carry different weight (assigned by CMS), and combined they produce the contract's single summary rating. CMS publishes its Star Rating methodology in annual sub-regulatory guidance documents called "Technical Notes," which set forth the applicable measures and other key data used to assign measure-level scores. CMS revises these Technical Notes, and the measures they describe, outside of notice-and-comment rulemaking.

35. Because the overall Star Rating is a weighted average, performance on any single measure—particularly a heavily weighted one—can push a contract to a higher or lower half or full Star Rating. Thus, today, the Medicare "Star Ratings" program serves two purposes: it is CMS's main vehicle for evaluating and publicizing MAO care quality while also embodying the financial incentive structure Congress designed to encourage quality-driven competition among MAOs.

**B. Rebate retention and the Quality Bonus Payment**

36. Under the MA program, MAOs submit bids to CMS in early June of the year preceding the contract year (*e.g.*, bids for MA contract year 2028 will be due to CMS in June 2027). MAOs whose bids fall below the applicable benchmark receive a "rebate" from CMS, which they may utilize to enhance benefits, reduce cost-sharing, or lower premiums.

37. The amount of that rebate an MAO retains depends directly on its Star Rating. Contracts rated below 3.5 stars (including unrated or new plans) retain 50% of the rebate amount. Contracts achieving a rating of at least 3.5 but below 4.5 stars retain 65%. This framework thereby rewards higher-quality contracts with greater financial flexibility. This tiered structure means that a contract's Star Rating carries significant downstream effects for its capacity to fund improved benefit designs and maintain competitiveness in the marketplace.

38. For MAOs like the JHP Entities, the half-star differences in their Star Ratings for Contracts H9207, H1619, and H3124 total approximately $43 million in lost annual rebates; this loss directly diminishes the benefits and programs that the JHP Entities can offer to their members.

**C. The Medicare Advantage cycle**

39. An MA contract's Star Rating for a given year determines its rebate retention (as well as a QBP, if any) for the following contract year. Those anticipated rebates and QBPs are factored into the bids MAOs submit to CMS in early June of the year preceding the contract year.

40. Relevant here, CMS released the 2027 Star Ratings for the JHP Entities (and all other MAO contracts) on October 8, 2026. Those 2027 Star Ratings determine the JHP Entities' rebate retention for use in MA contract year 2028. The bids for the 2028 contracts are due to CMS in June 2027.

41. The schedule of key Medicare events relevant to the 2027 Star Ratings cycle is as follows:

| **2027 Star Ratings – Key Periods and Events** | |
|---|---|
| Calendar Year 2025 | Measurement period for the performance data that serve as a baseline for JHP Entities' 2027 Star Ratings |
| June 1, 2026 | Statutory bid deadline for 2027, factoring in anticipated 2027 rebate retention and QBPs based on 2026 Star Ratings |
| Aug. 5, 2026 – Aug. 12, 2026 | Plan Preview 1 for 2027 Star Ratings |
| Sept. 8, 2026 – Sept. 15, 2026 | Plan Preview 2 for 2027 Star Ratings |
| Oct. 8, 2026 | 2027 Star Ratings Published |
| Oct. 15, 2026 | Annual Election Period commences |
| Jan. 1, 2027 | Medicare Advantage Open Enrollment commences |

| | |
|---|---|
| June 7, 2027 | Statutory bid deadline for 2028, factoring in anticipated 2028 rebate retentions and QBPs based on 2027 Star Ratings |

## III. <u>The *Clover* decision</u>

42. On November 7, 2025, Clover Insurance Company filed suit in the United States District Court for the Southern District of Georgia challenging its 2026 Star Rating on the ground that CMS had unlawfully adopted certain measures used in its calculation. *See generally Clover Ins. Co.*, 2026 WL 1483515.

43. In an order entered on May 27, 2026, the court held that 20 measures on which CMS relied in calculating the 2026 Star Ratings were unlawful. Specifically, the *Clover* court held that the Medicare statute, 42 U.S.C. § 1395w-23(o)(4)(A), prohibits CMS from incorporating Star Ratings measures derived from data collected outside the data sources authorized by § 1395w-22(e), and that 10 measures challenged by the Clover Insurance Company ("Clover") ran afoul of that statutory limitation. *Id.* at *14. The court also held that CMS's utilization of ten other measures challenged by Clover was procedurally improper because those ten measures were not adopted pursuant to public notice-and-comment as required by another section of the Medicare statute, 42 U.S.C. § 1395hh(a)(2). *Id.* at *25.

44. The court vacated Clover's 2026 Star Rating and directed CMS to recalculate it consistent with its holdings. The lawsuit and judgment were limited to 2026 Star Ratings.

45. CMS did not immediately appeal that decision and seek a stay. Instead, within two weeks of the order, CMS complied with it by recalculating Clover's 2026 Star Rating as ordered by the court.

46. On July 21, 2026, CMS filed a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. *See Clover Ins. Co. v. DHHS*, No. 2:25-cv-00142 (S.D. Ga.), Notice of Appeal, ECF No. 67 (July 21, 2026). CMS subsequently requested expedited briefing, which the court granted. *See Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Mot. to Restart or Set Briefing Schedule and to Expedite Oral Argument, ECF No. 13 (Aug. 19, 2026); *Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Order, ECF No. 15-1 (Sept. 2, 2026). Argument has been scheduled for the week of January 18, 2027. *Clover Ins. Co. v. DHHS*, No. 26-12553 (11th Cir.), Revised Notice to Counsel, at 1 (Sept. 21, 2026).

## IV. JHP Entities' 2027 Star Ratings

### A. CMS's Calculation of JHP's 2027 Star Ratings in October 2026

47. On October 8, 2026, CMS published the 2027 Star Ratings. With respect to the JHP Entities, CMS assigned an overall 2027 Star Rating of 3.0 Stars to Contracts H9207 and H1619. As a result of only receiving 3.0 Stars, Contracts H9207 and H1619 are only entitled to receive 50% of the rebate available to invest in enrollees in the form of increased benefits, reduced premiums, or other quality initiatives.

48. Among the measures CMS used to calculate the JHP Entities' 2027 Star Ratings were D08 (Medication Adherence for Diabetes Medications); D09 (Medication Adherence for Hypertension (RAS antagonists)); and D10 (Medication Adherence for Cholesterol (Statins)). These three measures are among the ten the *Clover* court held unlawful on grounds they were adopted in excess of CMS's statutory authority. The Jefferson Parties ask this Court to find them unlawful on that ground, and also because they were required to be, but were not, adopted (if at all) via notice-and-comment rulemaking.

**B. The impact of the unlawful three measures in the 2027 Star Rating on the JHP Entities' MA contracts**

49. Absent the three unlawful measures, the Jefferson Parties project that Contracts H9207 and H1619 would have received a higher overall 2027 Star Rating of 3.5 rather than 3, and that Contract H3124 would have received a higher overall 2027 Star Rating of 3 rather than 2.5.

50. The financial consequence of CMS's unlawful action cannot be overstated. A Star Rating of 3.5 would entitle Contracts H9207 and H1619 to receive 65% rebate retention, which would increase revenue and allow for the JHP Entities to enhance the benefits offered to plan members and potential members, thus making them more competitive within the market and offering an improved member experience. The overall financial harm amounts to approximately $43 million in lower or lost rebates over the course of 2028. These are resources that JHP Entities could direct toward supplemental benefits, premium reductions, and quality improvement initiatives for their members.

**C. Reputational harm caused by the publication of unlawfully derived 2027 Star Ratings**

51. Further, CMS's publication of the 2027 Star Ratings for H9207, H1619, and H3124 has caused, and continues to cause, significant reputational harm to the JHP Entities. CMS also published the JHP Entities' measure-level 2027 Star Ratings for H9207, H1619, and H3124 on the CMS Medicare Plan Finder tool (https://www.medicare.gov/plan-compare/#/?lang=en&year=2027). CMS's Medicare Plan Finder renders both the overall and measure-specific ratings visible to Medicare beneficiaries, brokers, and the general public, and current and prospective Medicare beneficiaries regularly consult them when making enrollment decisions.

52. A depressed Star Rating signals to members and the market that an MAO's quality of care is substandard, regardless of whether that rating accurately reflects the MAO's actual

performance. At the same time, because Star Ratings are relative, competitor MAO ratings may be artificially inflated, especially given the treatment afforded to Clover for 2027, further distorting how the JHP Entities are perceived and casting them in a less favorable light.

53. The reputational implications of a below-threshold Star Rating extend beyond any individual enrollment cycle. Brokers and third-party marketing organizations that direct Medicare beneficiaries toward specific plans may deprioritize or refuse to market lower Star plans, reducing the JHP Entities' visibility and competitiveness in the marketplace.

54. Employers and plan sponsors that offer MA options to retirees may similarly rely on Star Ratings as a proxy for plan quality, and a suppressed rating diminishes the JHP Entities' ability to compete for and retain those relationships.

## CLAIMS FOR RELIEF

### COUNT I: AGENCY ACTION NOT IN ACCORDANCE WITH LAW, IN VIOLATION OF STATUTORY RIGHT, IN EXCESS OF STATUTORY AUTHORITY—2027 STAR RATINGS (5 U.S.C. § 706(2)(A), (C))

55. Plaintiffs incorporate by reference paragraphs 1-54 above as though fully set forth herein.

56. Congress restricted the data upon which CMS's Star Ratings may be based to data for which an MAO provides for the collection, analysis, or reporting as part of its quality improvement program. 42 U.S.C. § 1395w-23(o)(4)(A) (requiring Star Ratings to be based on "data collected under section 1395w-22(e) of this title").

57. CMS calculated the 2027 Star Rating for Contracts H9207, H1619, and H3124 using measures that are based on data not collected under § 1395w-22(e). Specifically, the three measures challenged in this Complaint (D08, D09, and D10) were calculated utilizing data generated outside the scope of what CMS is permitted to use under § 1395w-22(e) to calculate

Star Ratings.

58. Because CMS calculated the JHP Entities' 2027 Star Ratings for Contracts H9207, H1619, and H3124 using data not collected under § 1395w-22(e), the Court should vacate the unlawful 2027 Star Ratings for these three contracts and direct CMS to recalculate them without regard to the three measures challenged here (D08, D09, and D10).

**COUNT II: AGENCY ACTION TAKEN WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW—2027 STAR RATINGS (5 U.S.C. § 706(2)(D))**

59. Plaintiffs incorporate by reference paragraphs 1-54 above as though fully set forth herein.

60. Under 5 U.S.C. § 706(2)(D), an agency may not act without observance of procedure required by law.

61. Congress has mandated that CMS engage in notice-and-comment rulemaking and codify "by regulation" any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under [Medicare]." *Azar v. Allina Health Servs.*, 587 U.S. 566, 570 (2019) (quoting 42 U.S.C. § 1395hh(a)(2)).

62. Moreover, by its own regulation, CMS is obligated to adopt new quality measures through notice-and-comment rulemaking. *See* 42 C.F.R. § 423.184(c)(2) ("In advance of the measurement period, CMS will announce potential new measures and solicit feedback through the process described for changes in and adoption of payment and risk adjustment policies in section 1853(b) of the Act and then subsequently will propose and finalize new measures through rulemaking."). *See also id.* § 423.184(d) (requiring notice-and-comment rulemaking for

substantive updates to existing measures).

63. CMS did not undertake the required notice-and-comment rulemaking and codify "by regulation" any of the three measures challenged in this Complaint in calculating the JHP Entities' 2027 Star Ratings. Each of the three measures challenged here establishes a substantive legal standard governing the JHP Entities' rebate retention and QBP eligibility—and therefore governing "the payment for services" within the meaning of 42 U.S.C. § 1395hh(a)(2)—yet none was promulgated by regulation.

64. Because CMS calculated the 2027 Star Ratings for Contracts H9207, H1619, and H3124 using measures adopted without observance of procedure required by law (*i.e.*, notice-and-comment), the Court should vacate the 2027 Star Ratings for those three contracts and direct CMS to recalculate their Star Ratings without regard to the three measures challenged here (D08, D09, and D10).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and:

a) Declare that measures D08, D09, and D10 were adopted in excess of CMS's statutory authority because those measures were not derived from data collected under section 1395w-22(e), as required by 42 U.S.C. § 1395w-23(o)(4)(A);

b) Declare that measures D08, D09, and D10 were adopted by CMS without observance of procedure required by law because CMS failed to adopt those measures through public notice-and-comment;

c) Vacate the 2027 Star Rating of Contracts H9207, H1619, and H3124 and order CMS to recalculate the overall 2027 Star Rating for each contract without regard to the three

unlawful measures identified in this Complaint;

d) Direct CMS to determine all 2028 rebates for Contracts H9207, H1619, and H3124 consistent with the recalculated Star Rating;

e) Order CMS to permit the JHP Entities to revise any previously submitted MA bid(s) necessary to effectuate the judgment, consistent with this Court's order, the recalculated Star Ratings, and the revised rebates; and

f) Award Plaintiffs such other and further relief as the Court may deem just and proper, including costs and fees, as permitted by law.

*[Signature Page Follows]*

Dated: November 4, 2026

/s/ Daniel W. Wolff
Daniel W. Wolff
DWolff@crowell.com
D.C. Bar No. 486733
**Crowell & Moring LLP**
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 624-2621

Steven D. Hamilton (*pro hac vice* forthcoming)
StevenHamilton@crowell.com
Illinois Bar No. 6289663
**Crowell & Moring LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
Telephone: (312) 379-7615

*Counsel for Plaintiffs*